UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| SHERRY LYNN HOWEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-425-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Sherry Lynn Howey ("Howey" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 12, 13] Howey argues that the administrative law judge ("ALJ") assigned to her case erred by failing to consider her chronic obstructive pulmonary disease ("COPD") as a severe impairment and that the ALJ failed to follow the administrative regulations when evaluating opinion evidence. [Record No. 12, p. 5] As a result, Howey requests remand of the ALJ's decision and an award for benefits. The Commissioner asserts that the ALJ's decision is supported by substantial evidence and should be affirmed. [Record No. 13, p. 1]

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Howey.

I.

On September 21, 2010, Howey applied for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). [Record Nos. 9 and 10, Administrative Transcript, "Tr.," pp. 236–37] She alleged a disability beginning January 5, 2008. Howey's application was denied initially and upon reconsideration by the Social Security Administration ("SSA"). [Tr., pp. 159–79] Howey, along with attorney Rodney Davis and vocational expert Linda Taber, appeared before ALJ Greg Holsclaw on February 14, 2012, for an administrative hearing. [Tr., p. 104] On March 14, 2012, ALJ Holsclaw found that Howey was not disabled under sections 216(i) and 223(d) of the Act. [Tr., pp. 92–100] Howey filed an appeal with the SSA's Appeals Council. However, this appeal was denied on October 17, 2013. [Tr., pp. 1–4]

Howey was 44 years old when her alleged disability began on January 5, 2008, and 48 years old at the time of the ALJ's decision. [Tr., p. 99] She has a high school education and has previously worked as an assistant manager at Warner Hallmark Store. [Tr., p. 95, 99] Howey contends that she is unable to work due to disabling conditions arising from diabetes, diabetic neuropathy, COPD, and diabetic retinopathy. [Tr., p. 95; Record No. 12, p. 3] After considering the testimony presented at the administrative hearing and reviewing the record, the ALJ concluded that Howey suffers from the following severe impairments: diabetes with retinopathy, a history of cataracts corrected by surgery, and diabetic neuropathy affecting her hands and feet. [Tr., pp. 94–96] Notwithstanding these impairments, the ALJ determined that Howey maintained the residual functional capacity

("RFC") to perform less than a full range of sedentary work, subject to the following limitations:

> [Howey] is limited to tasks with no lifting/carrying more than 10 pounds occasionally; no standing/walking for more than two hours out of an 8-hour workday, or for more than 30 minutes at one time; no sitting for more than six hours out of an 8-hour workday; unlimited pushing or pulling up to the exertional limitations; no more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing of ramps or stairs, but no climbing of ladders, ropes or scaffolds; no work that requires more than occasional operation of foot pedals; no more than frequent fine fingering or gross manipulation bilaterally; no work in areas of concentrated bright light or loud sounds; no work that requires more than occasional fine visual acuity; and no requirement for reading unless it can be done by a light provided at the workstation.

[Tr., p. 97]

After considering Howey's age, education, work experience, and RFC, and based upon vocational expert Taber's testimony, the ALJ determined that there were a significant number of jobs in the national economy that she could perform, including order clerk and dispatcher. [Tr., pp. 99–100] As a result, the ALJ found that Howey was not disabled from January 5, 2008, through the date of the ALJ's decision. [Tr., p. 100]

**II.**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts

to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g). The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

**A. Severe Impairments**

Howey argues that the ALJ erred by failing to classify her COPD as a severe impairment. [Record No. 12, pp. 6–7] She asserts that she has been diagnosed and treated for COPD by her primary treating physician, Dr. Rondal Goble. While the ALJ evaluated Howey's alleged COPD, he found that it was not corroborated by the objective medical

evidence. [Tr., p. 96] Nonetheless, the ALJ proceeded past step two of the sequential evaluation process and analyzed both Howey's severe and nonsevere impairments.

It is the claimant's burden to prove the severity of her impairments at the second step of the sequential evaluation process. *See Her*, 203 F.3d at 391. A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Sixth Circuit has held that "the severity determination is 'a *de minimis hurdle* in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs*, 880 F.2d at 862). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Additionally, the mere diagnosis of a condition does not thereby establish its severity. *Higgs*, 880 F.2d at 863.

At step two, the ALJ determined that Howey suffered from severe impairments, including diabetes with retinopathy, a history of cataracts corrected by surgery, and diabetic neuropathy of the hands and feet. [Tr., pp. 94–96] Once step two is cleared by determining that some severe impairments exist, the ALJ must then consider a claimant's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony*, 266 F. App'x at 457; SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). "The fact that some of [a claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* As a result, any alleged omission of Howey's COPD from the list of severe impairments does not necessarily undermine the ALJ's decision. *See id.*; *Talos v. Comm'r of*

*Soc. Sec.*, No. 11-13207, 2012 WL 1392156, at *8 (E.D. Mich. Mar. 26, 2012); *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, the ALJ considered the Claimant's alleged COPD throughout the entirety of the disability analysis. [Tr., pp. 96–97] When determining Howey's RFC, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can be accepted as consistent with the objective medical evidence," including nonsevere impairments. [Tr., p. 97] As described more fully below, the ALJ examined the medical notes from her visits with Dr. Goble, which discussed Howey's alleged COPD. The ALJ found the medical notes to be contradictory and equivocal regarding the limitations caused by COPD. [Tr., pp. 98, 353–56] Finally, the ALJ stated that "[a]lthough the chronic obstructive pulmonary disease is not severe within the meaning of the regulations, it is nonetheless been discussed in combination with the severe impairments in determining the claimant's residual functional capacity." [Tr., p. 96] Thus, the ALJ's failure to find that the alleged COPD qualified as a severe impairment is not reversible error. *Riepen v. Comm'r of Soc. Sec.*, 198 F. App'x 414, 415 (6th Cir. 2006) (finding that even if the ALJ should have found the plaintiff's multiple sclerosis was also a severe impairment, the failure to do so "would not be a basis for reversal or remand because the ALJ considered all of [the plaintiff's] alleged limitations throughout the remaining steps of the evaluation process").

### B. Weight of Medical Opinions

Howey also asserts that the ALJ failed to properly evaluate the opinions of treating physician Dr. Rondal Goble, M.D., and consultative examiners Dr. Curt Coulter, D.O., Dr. Andrew J. Koerber, M.D., and Dr. James Matthews, M.D. [Record No. 12, pp. 8–11]

Specifically, she contends that the ALJ "failed to set forth any basis for rejecting" the various opinions of each doctor and failed to provide the proper weight to these opinions as required by the governing statute. [*Id.*]

### 1. Dr. Rondal Goble, M.D.

Howey began seeing Dr. Rondal Goble on September 1, 2009, and continued seeing him through January 3, 2012. Dr. Goble issued a functional limitations report on January 3, 2012. [Tr., pp. 353–58] In this report, he provided various opinions regarding Howey's physical limitations. However, the ALJ provided these opinions "little weight." Howey now asserts that the ALJ "failed to set forth any basis" for this determination in violation of 20 CFR § 404.1527(c). [Record No. 12, p. 9]

Generally, a treating physician's medical opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record. 20 C.F.R. § 404.1527(c)(2). However, failure to give controlling weight to the treating physician's opinion does not necessarily mean that the ALJ's opinion should be rejected. Instead, the ALJ must determine what weight to give to a treating physician's medical opinion by considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)–(6). Further, the ALJ must always give "good reasons" for accepting or rejecting a medical

opinion. 20 C.F.R. § 416.927(c)(2); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Additionally, an "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Kornecky v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2006) (per curiam) (quoting *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is not 'inconsistent' with the other substantial evidence in the case record." SSR 96-2p, 1996 WL 374188. The regulations also provide that a physician's opinion regarding whether a claimant is unable to work or disabled is given no "special significance." 20 C.F.R. § 404.1527(d)(1).

Howey's assertion that the ALJ did not properly evaluate the opinions of Dr. Goble is without merit. Howey argues that the ALJ only noted that Dr. Goble's opinions were contradictory and "ignored the voluminous office treatment notes and testing" performed. [Record No. 12, p. 9] Dr. Goble concluded that Howey was "totally; permanently disabled." [Tr., p. 358] He also provided various opinions regarding Howey's physical limitations.

As stated by the ALJ, the determination of whether a claimant is disabled is reserved for the Commissioner. Thus, Dr. Goble's opinion that Howey is "totally; permanently disabled" is entitled to no special significance. 20 C.F.R. § 404.1527(d)(1). Further, the ALJ specifically discussed Dr. Goble's limitations report throughout the decision. The ALJ found Dr. Goble's report to be contradictory, inconsistent with the medical evidence and Howey's own testimony, and lacking "citation[s] to medical evidence in support of the opinions."

Considering these inadequacies, the ALJ gave Dr. Goble's opinions "little weight." [Tr., p. 98]

Initially, the ALJ found Dr. Goble's January 3, 2012, functional limitations report contradictory. [Tr., pp. 96, 353–58] Indeed, a review of Dr. Goble's report demonstrates that his findings were inconsistent. In a statement regarding diabetes for the social security claim, Dr. Goble found that Howey could neither sit nor stand for any period of time but could occasionally balance. [Tr., p. 357] However, in a previous section filled-out that same day, Dr. Goble asserted that Howey was not limited in her ability to sit, could stand for up to half an hour during an eight hour workday, and could do no balancing because of her neuropathy. [Tr., pp. 354–55] Further, without explanation, Dr. Goble concluded that Howey had no restrictions from working around dust or chemicals, but did have restrictions from working around fumes.

ALJ Holsclaw also determined that Dr. Goble failed to provide sufficient citations to medical evidence. For example, the ALJ found that, although Dr. Goble concluded that Howey had limitations on handling, feeling, and seeing, he neglected to define the limitations. Dr. Goble found that Howey could "not do fine motor" due to neuropathy but failed to state whether she was limited in her upper or lower extremities. [Tr., p. 355] Despite the directions on the form, Dr. Goble's limitations report failed to provide citations to medical evidence in support of his opinions. [Tr., pp. 354–56] In short, ALJ Holsclaw found that Dr. Goble's limitations report was not consistent with the substantial evidence of record which he determined to support a finding that Howey was not disabled. *See* 20 C.F.R. § 416.927(d); *see also Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804–05 (6th

Cir. 2011) (noting that the regulations "expressly require only that the ALJ's decision include good reasons for the weight given to the treating source's opinion—not an exhaustive factor-by-factor analysis" (internal quotation marks omitted)); *Smith*, 482 F.3d at 877 (holding that an ALJ's decision to not give a treating source's opinion controlling weight where he found it to be "inconsistent with the overall evidence of the record" was "a factual determination within [the ALJ's] discretion"). Although Howey asserts that the ALJ "failed to set forth any basis" for rejecting Dr. Goble's opinions, it is clear that this argument is unsupported by the record.

Contrary to the Claimant's argument, the record contains substantial evidence supporting the ALJ's determination that Dr. Goble's opinions deserved "little weight" and were not supported by the medical evidence or Howey's descriptions of her activities. Dr. Goble diagnosed Howey with diabetic mellitus, diabetic peripheral neuropathy, diabetic neuropathy, and COPD. As a result, he concluded that Howey could only stand or walk for up to a half-hour per day, had impaired feeling and seeing, and had environmental restrictions.[1] Howey's medical examinations demonstrate that she has diabetes. However, the medical evidence provided in the record does not support the *extent* of the physical limitations suggested by Dr. Goble.

After failing to take her medication for a year, Howey began receiving treatment at Mercy Health Clinic for her diabetes in 2009. She was diagnosed with peripheral neuropathy

---

1  As described above, Dr. Goble's limitations report was contradictory regarding the Claimant's environmental restrictions and her ability to sit, stand, and balance. Further, it failed to include objective medical evidence supporting the restrictions. [Tr., pp. 354–55] These inadequacies are also relevant to the substantial evidence analysis.

in 2010 and 2011. A review of the medical records demonstrates that no objective findings of neurological deficits were ever recorded. [Tr., pp. 401–02, 406–09] Instead, the diagnosis was based on Howey's subjective complaints of pain and numbness in her hands and feet. Dr. Goble also diagnosed COPD, but physical examinations of Howey's chest demonstrated no respiratory distress, normal breath sounds, and normal breathing effort. [Tr., pp. 401–09] Finally, Dr. Goble stated that Howey's vision was severely impaired and that she suffered from cataracts. [Record No. 357] But the record demonstrates that Howey had surgery to correct the cataracts [Tr., p. 346], and that as of January 31, 2011, her corrected vision was 20/30 both near and at a distance. [Tr., pp. 347–48]

The December 18, 2010 examination, performed by consultative examiner Dr. Andrew Koerber also supports the ALJ's finding. Dr. Koerber found that Howey's lungs were clear to auscultation bilaterally. And while Howey had discoloration in both of her feet, Dr. Koerber found that she had no edema or ulcers in her extremities. Howey had a full range of motion in her arms and legs and recorded strength of 5/5 in all extremities. She also had no problem getting on and off the examination table and presented with normal posture and gait. [Tr., p. 339] Although Howey had some motor dysfunction because she was unable to perform a toe or tandem walk, Dr. Koerber determined Howey had no neurological deficits, reflex abnormalities, or sensory abnormalities. [Tr., p. 341]

Finally, Howey's own testimony supports the ALJ's finding that Dr. Goble's report was not support by the record. Although Dr. Goble found that Howey was unable stand, Howey stated in her administrative hearing before the ALJ that she attempts to walk outside twenty minutes per day, is able to do household chores, gardens, and is able to take care of

her personal needs. [Tr., pp. 118, 123–26] She also testified that she fractured her leg while attempting to pick up rocks for a fire pit. On November 2, 2010, in a personal questionnaire, Howey reported that she has no problems taking care of her personal needs, is able to cook dinner, vacuums the house once a week, and is able to do grocery shopping for an hour per week. [Tr., pp. 274–75] Additionally, Howey indicated that she is able to read with a table light. In short, the record demonstrates that substantial evidence supports the ALJ's finding that Dr. Goble's opinion was entitled to "little weight."

### 2. Dr. Curt Coulter, D.O.

Howey also asserts that the ALJ "failed to assign any weight to the opinion of Dr. Coulter." [Record No. 12, p. 10] Specifically, she contends that the ALJ disregarded Dr. Coulter's determination that her "ability to work is severely limited." [*Id.*, p. 9; Tr., p. 333] As a result, Howey argues that clear error has occurred in direct violation of the statutory framework. [Record No. 12, p. 10]

The ALJ did not mention Dr. Coulter's March 31, 2008 opinion that Howey's "ability to work is severely limited." As such, he did not provide any weight to that opinion or any reason under the statute for failing to abide by its conclusion. However, as stated earlier, opinions on a claimant's ability to work are not medical opinions. Instead, such opinions are "on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d).

Further, Howey visited Dr. Coulter for the first time on March 31, 2008. During that examination, Dr. Coulter concluded that Howey's "ability to work is severely limited."[2] [Tr., p. 333] As described above, the opinions of treating physicians are generally given more weight and require "good reason" for the weight given to their opinion. However, in determining the standard by which to evaluate a medical opinion, the ultimate questions is "whether [the physician] had the ongoing relationship with [the claimant] to qualify as a treating physician at the time he rendered his opinion." *Kornecky*, 167 F. App'x at 506. The treating source doctrine is based on the premise that a physician with an ongoing relationship with the claimant will have a better insight and understanding of his or her condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Here, Dr. Coulter rendered his opinion following one examination. As a result, he did not have the requisite relationship with the Claimant to qualify as a treating physician and his opinion does not qualify as the opinion of a treating physician and the procedural requirements applicable to treating physicians do not apply. *Smith*, 482 F.3d at 876 (noting that the Social Security Administration "requires ALJ's to give reasons for only *treating* sources").

Finally, it is clear from the ALJ's decision that Dr. Coulter's medical evaluations were considered. The ALJ discussed Dr. Coulter's progress notes in concluding that she suffered from diabetes. [Tr., p. 97] The ALJ noted that the progress notes from Howey's first visit on March 31, 2008, showed that her gate was intact, station and posture was normal, and her upper and lower extremities were unremarkable. [Tr., pp. 97, 329–333]

---

2   Howey visited Dr. Coulter two more times on April 14, 2008, and May 1, 2008. However, no medical opinions were given as a result of those visits. [Tr., pp. 322–23, 326–28]

Further, the ALJ cited that Howey's blood sugar levels decreased following her initial visit with Dr. Coulter. It is clear that the ALJ took Dr. Coulter's evaluations and medical notes into consideration when determining Howey's RFC.

### 3. Dr. Andrew Koerber, M.D.

Howey contends that the ALJ disregarded the opinion of Dr. Andrew Koerber. She visited Dr. Koerber on December 18, 2010, for a one-time consultative examination. [Tr., p. 338] Dr. Koerber concluded that Howey had the "ability to perform activities including sitting, standing for short periods of time, moving about for short periods of time, lifting, [and] handling objects." [Tr., p. 341] Dr. Koerber also found that "Howey would have difficulty performing activities involving standing or moving about for long periods of time or carrying objects." Although Howey claims that the ALJ disregarded Dr. Koerber's opinion, it is apparent that this is not the case.

The ALJ afforded "greater weight" to Dr. Koerber's opinion because it was consistent with Howey's description of her physical activities and with the objective medical evidence in the record. [Tr., p. 98] This is demonstrated in the RFC, which limited Howey to "no standing/walking for more than two hours out of an 8-hour workday, or more than 30 minutes at one time [and] no sitting for more than six hours out of an 8-hour workday." [Tr., p. 97] Further, the RFC found that "[t]he claimant is limited to tasks with no lifting/carrying more than 10 pounds occasionally." [Tr., p. 97] It is evident from the ALJ's ruling that Dr. Koerber's opinion was not disregarded and the ALJ did not err in his evaluation of that opinion.

### 4. Dr. James Matthews, M.D.

Next, Howey argues that the ALJ's basis for rejecting Dr. Matthews' opinion is not supported by substantial evidence.[3] Dr. Matthews is an eye specialist who conducted a one-time examination of the Claimant. Following that examination, he stated that "the patient should be able to perform such activities as sitting, standing, moving about, lifting, carrying, and handling gross objects. She may have trouble with seeing, performing fine motor tasks, and traveling." [Tr., p. 349]

The ALJ gave "little weight to [the] opinion of consultative examiner Dr. [Matthews]" because he did not test her physical capabilities but relied on Howey's speculative descriptions. [Tr., p. 98] Howey argues that the ALJ erred by rejecting the opinion of Dr. Matthews because "[t]he limitation was related to the Plaintiff's ability to see for fine manipulation, rather than her physical ability to engage in fine manipulation." [Record No. 12, p. 10] Howey contends that the ALJ "simply ignored the limitations based on the Plaintiff's sight." [*Id.*]

Dr. Matthews' opinion was not entitled to any special deference or consideration as he did not qualify as a treating physician. He did not have an ongoing treatment relationship with Howey as he only saw her on one occasion. *See* 20 C.F.R. § 404.1502; *Smith*, 482 F.3d at 876. Further, despite Howey's assertions, it is clear from the opinion that the ALJ took Dr. Matthews' medical examination of Howey's visual capacity into consideration. The RFC determined that Howey could do "no work in areas of concentrated bright light or loud

---

3   The ALJ's opinion considers the medical opinions and evidence of "Dr. James." For the purposes of this review, the Court considers those statements to be in reference to Dr. James Matthews.

sounds; no work that requires more than occasional fine visual activity; and no requirement for reading unless it can be done by a light provided at the workstation." [Tr., p. 97] As grounds for this determination, the ALJ cited Dr. Matthews' visual examination concluding that Howey's corrected distant and near vision was 20/30 in each eye and Howey's testimony that she was able to read with a table light. The ALJ also took into consideration Howey's testimony that she was able to look for rocks in an area of soil for a fire pit. The ALJ found that this testimony, along with Dr. Matthews' examination, discounted the credibility of Howey's assertions that she has significant loss of eyesight. [Tr., p. 97] Although the ALJ discounted Dr. Matthews' opinion regarding the Claimant's physical limitations based on Howey's descriptions, it is apparent that the medical evidence from the visual examination was considered. Thus, the weight provided to the opinion of Dr. Matthews was appropriate and the ALJ's basis was supported by substantial evidence.

### C. Review of Record

Howey finally asserts that the ALJ only reviewed information used to support the defendant's position and failed to review the record as a whole. [Record No. 12, p. 11] The ALJ's decision makes it is apparent that he went through the opinions of Howey's various doctors, the medical records, and her own testimony in making his determination. Although the ALJ did not comment on every piece of evidence, the Sixth Circuit has noted that "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky*, 167 F. App'x at 508 (internal quotation marks omitted); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir.

2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). Thus, the ALJ did not err in his review of the record.

### IV.

The ALJ did not err by failing to classify the Claimant's COPD as a severe impairment. Further, the ALJ properly consider the medical opinions and evidence in the record. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Sherry Lynn Howey's motion for summary judgment [Record No. 12] is **DENIED**.

2. Defendant Carolyn W. Colvin's motion for summary judgment [Record No. 13] is **GRANTED**.

3. The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 28th day of January, 2015.



Signed By:
*Danny C. Reeves* DCR
United States District Judge